IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**COMMUNICATION WORKERS OF AMERICA LOCAL 3010, AFL-CIO,**

**Plaintiff,**

**v.**                                                                                                    **CIVIL NO. 16-2635 (GAG)**

**TELEPHONE TECHNOLOGY SYSTEMS, INC.,**

**Defendant.**

## OPINION AND ORDER

Communication Workers of America Local 3010, AFL-CIO ("the Union") seeks a preliminary injunction against Telephone Technology Systems, Inc. ("TTS") based on their Collective Bargaining Agreement ("CBA"). (Docket Nos. 1; 2.) The Union seeks an injunction to order arbitration, resume work, and reinstate medical insurance premium payments. (Docket No. 2.) TTS moves to dismiss the Union's complaint, arguing the CBA expired. (Docket No. 18.) After review of the parties' submissions and applicable law, Defendant's motion to dismiss at Docket No. 18 is **DENIED**. For the reasons set forth below, the Union's motion for preliminary injunction at Docket No. 2 is hereby **GRANTED**.

**I.      Relevant Procedural and Factual Background**

The Union and TTS entered into a CBA effective from June 10, 2011 to June 10, 2014. (Docket No. 1, ¶ 5.) Article 10 of the CBA establishes a two-step procedure for resolving disputes. First, an aggrieved party submits a dispute to management; and if unsuccessful, the dispute then proceeds to arbitration. (Docket No. 14-1 at 5.) The CBA's arbitration provision provides:

> Any controversy or dispute regarding the Agreement, some of its provisions or any action or complaint by any one or some of the members of the appropriate unit shall

> be resolved by an arbitrator if and when same have not been resolved according to the procedure agreed to in the previous section of the Article.

(Docket No. 14-1 at 7.)  Article 40 details the CBA's "No Strike No Lockout" provisions.  (Docket No. 22-1.)  Finally, Article 44 of the CBA specifies the agreement's duration:

> The parties agree that this Collective Bargaining Agreement shall come into force as of Friday, June 10th of 2011, and shall remain in force until June 10th of 2014. This Agreement will continue in force for the subsequent years with all its properties, unless one of the parties notified the other in writing as to their wish to modify same, no later than three (3) months prior to its termination.  No later than thirty (30) days after stated notification, the parties shall initiate the collective bargaining.  Lastly the parties agree that the provisions of the Collective Bargaining Agreement shall continue in force with all its properties until a new Collective Bargaining Agreement is negotiated, and until the date in which the new provisions come [*sic*] into force.

(Docket No. 27-1.)  Thus, the provisions of Article 44 state the CBA "shall remain in force until June 10th of 2014" and also that the CBA "shall continue in force with all its properties until a new [CBA] is negotiated[.]"  Id.

June 10, 2014 came and went.  On July 13, 2015, the parties agreed to "extend the [CBA] until May 31, 2016 in full force and effect" except for certain compensation-related modifications.[1] (Docket No. 14-2.)  The extension end date of May 31, 2016 was "subject to an additional year extension, if the parties so were to agree."  Id. at 2.

After May 31, 2016, the parties continued to negotiate an extension, but were unable to come to an agreement.  (Docket No. 1, ¶ 5.)  The parties dispute the content and context of those negotiation efforts.  TTS claims Union employees refused to work on July 27, 2016.  (Docket No. 22-2 ¶ 7.)  The Union denies any strike and points to two August 2016 letters informing TTS that the Union is "available and willing to work."  (Docket Nos. 14-4 at 1; 22-2 at 7.)

---

[1] The modifications related to salaries, a holiday bonus, vacation and sick leave.  (Docket No. 14-2 at 2.)

2

On August 12, 2016, the Union filed a grievance against TTS. (Docket No. 14-3.) TTS did not respond. (Docket No. 1, ¶ 14.) On August 23, 2016, the Union sought to arbitrate the unresolved grievance. (Docket No. 14-5.)

On September 12, 2016, the Union filed a complaint for preliminary injunctive relief and a motion for preliminary injunction in aid of arbitration before this Court. (Docket Nos. 1, 2.) The Court then ordered TTS to show cause on or before September 27, 2016 as to the Union's injunction request. (Docket No. 11.) TTS filed its motion in compliance and moved to dismiss the Union's motion for preliminary injunction. (Docket No. 18.) The Union replied; TTS sur-replied. (Docket Nos. 23; 31.) On October 19, 2016, the matter stood as submitted. (Docket No. 33.)

**II.   Discussion**

The fundamental dispute between TTS and the Union concerns whether either party violated the CBA by engaging in a strike or lockout. From the Union's perspective, TTS violated the CBA by discharging or locking out Union members and failing to pay medical insurance premiums. (Docket No. 1, ¶ 16.) From TTS's perspective, the Union violated the CBA—to the extent it did not expire on May 31, 2016—by striking. (Docket No. 18 at 4.) From either perspective, a threshold question in this dispute is whether the CBA expired on May 31, 2016. (Docket Nos. 1, ¶ 5; 18 at 2.) Antecedent to that threshold question is another preliminary question: who should decide whether the CBA expired, the Court or an arbitrator?

First, the Court addresses TTS's motion to dismiss. TTS argues there is no arbitrable dispute because the CBA expired before the Union filed its grievance. Whether the CBA expired is, itself, an arbitrable dispute under the terms of the CBA's arbitration clause. Accordingly, the Court turns to the Union's motion for a preliminary injunction in aid of arbitration. The papers submitted by the parties demonstrate the Union's entitlement to injunctive relief.

3

**Civil No. 16-2635 (GAG)**

    A. <u>TTS's Motion to Dismiss</u>

The Court considers TTS's motion to dismiss under the familiar Rule 12(b)(6) standard. Plaintiff's factual allegations in the complaint must "possess enough heft" to set forth "a plausible entitlement to relief." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557, 559 (2007); <u>Thomas v. Rhode Island</u>, 542 F.3d 944, 948 (1st Cir. 2008).

The Norris LaGuardia Act generally prohibits injunctions in labor disputes. 29 U.S.C. §§ 101-115. However, the <u>Boys Markets</u> exception—which interprets Section 301(a) of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185(a)—allows for jurisdiction to hear disputes arising from the alleged violation of collective bargaining agreements. <u>Boys Markets, Inc. v. Retail Clerks Union, Local 770</u>, 398 U.S. 235, 252-53 (1970). The party seeking an injunction must show the alleged grievance is arbitrable. <u>Id.</u> at 247-49. The arbitrability of a given dispute turns on the scope of the arbitration clause in the contract entered into by the parties. <u>Int'l Broth. of Elec. Workers, Local 1228 v. Freedom WLNE-TV, Inc.</u>, 760 F.2d 8, 10 (1st Cir. 1985). The question of arbitrability is an issue for judicial determination. <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002).

Here, the parties dispute whether the CBA expired on May 31, 2016.[2] (Docket Nos. 18, at 7-8; 23 at 4-5). The CBA's durational language is ambiguous. Article 44 states the CBA will remain in force until June 10, 2014 yet also shall continue in force until a new CBA is negotiated. (Docket No. 27-1.) These provisions conflict. The 2015 Agreement and Stipulation—which extends the CBA "in full force and effect"—adds a second layer of ambiguity. (Docket No. 14-2.)

---

[2] The parties do not dispute the formation of the CBA. <u>Cf.</u> <u>Granite Rock Co. v. Int'l Broth. of Teamsters</u>, 561 U.S. 287, 297-300 (2010).

4

**Civil No. 16-2635 (GAG)**

The parties' interpretations of the CBA's durational language differ markedly, further evidencing the CBA's ambiguity.

The CBA's arbitration clause, on the other hand, is as clear as it is broad. The CBA's arbitration clause states that "[a]ny controversy or dispute regarding the Agreement . . . shall be resolved by an arbitrator . . . ." (Docket No. 14-1, at 7.) Thus, the dispute over whether the CBA expired is arbitrable under the terms of the CBA's arbitration clause. The First Circuit has held similarly in analogous labor disputes relating to analogously broad arbitration clauses. See Int'l Broth., 760 F.2d at 9 (affirming district court's order compelling arbitration of contract expiration dispute); see also Unite Here Local 217 v. Sage Hosp. Res., 642 F.3d 255, 260 (1st Cir. 2011). Therefore, Defendant's motion to dismiss is **DENIED**.

      B.  The Union's Request for a Hearing

The Court now turns to the Union's motion. The Union requests a preliminary injunction against TTS "after an appropriate hearing." (Docket Nos. 1 at 6; 32.) However, the facts supporting Plaintiff's request for arbitration are not disputed. Therefore, no hearing is necessary.

Typically, courts conduct an evidentiary hearing or oral argument before ruling on a motion for a preliminary injunction. Aoude v. Mobil Oil Corp., 862 F.2d 890, 893 (1st Cir. 1988). This general practice applies in labor disputes as well. See 29 U.S.C. § 107 (no injunctions in cases "involving or growing out of a labor dispute" except after an evidentiary hearing, specific factual findings, and issuance of a bond to cover damages."). However, the First Circuit has not determined whether Norris LaGuardia's section 107 evidentiary hearing requirement applies to injunctions to enforce arbitration agreements. See Otis Elevator Co. v. Int'l Union of Elevator Constructors, Local 4, 408 F.3d 1, 6 n.5 (1st Cir. 2005) (declining to consider whether the district court erred by issuing a preliminary injunction without first holding an evidentiary hearing).

**Civil No. 16-2635 (GAG)**

Here, the facts supporting the Union's arbitration request are undisputed. The CBA's arbitration clause submits "[a]ny controversy or dispute regarding the Agreement" to arbitration. (Docket No. 14-1 at 7.) The CBA's durational language is ambiguous. (Docket Nos. 14-2; 27-1.) The Union filed a grievance and seeks to arbitrate. (Docket Nos. 14-3; 14-5.)

Even if Norris LaGuardia section 107 applies to injunctions ordering arbitration, "no evidentiary hearing [i]s necessary because the facts supporting [the requested] relief are not in dispute." Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc., 969 F. Supp. 2d 59, 68 (D. Mass. 2013). Evidentiary hearings are useful to ensure the parties receive a fair opportunity to present their positions to the Court. Aoude, 862 F.2d at 894. The Court finds that both parties have received ample opportunity to present their positions. Therefore, Union's request for injunctive relief may be considered without an evidentiary hearing.

### C. Reverse *Boys Markets* Injunction

In Boys Markets, the Supreme Court recognized that courts may enjoin a labor organization from striking over a dispute subject to arbitration under a collective bargaining agreement. Boys Markets, 398 U.S. at 252-53. Likewise, courts have recognized 'reverse Boys Markets' injunctions, where an injunction prevents management from locking out labor in a dispute pending arbitration. Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Manuf. Co., 864 F.2d 927, 931 (1st Cir. 1988). In both instances, the injunction holds a recalcitrant party to its word by preserving the effectiveness of an arbitration agreement. Verizon New England, Inc. v. Int'l Broth. of Elec. Workers, Local No. 2322, 651 F.3d 176, 183 (1st Cir. 2011). Since the parties previously agreed to arbitrate disputes, injunctive relief is appropriate to ensure the parties do so. Indep. Oil, 864 F.2d at 929.

**Civil No. 16-2635 (GAG)**

To obtain a Boys Markets injunction, the moving party must show (1) a collective bargaining agreement between the parties providing for mandatory arbitration; (2) a dispute subject to binding arbitration under the agreement; and (3) that traditional principles of equity warrant injunctive relief. Verizon New England, 651 F.3d at 184-85; Otis Elevator, 408 F.3d at 7. Here, the first two elements are clearly satisfied. The CBA provided for mandatory arbitration. The dispute about whether the CBA expired on May 31, 2016 is subject to binding arbitration because CBA's arbitration clause provides for arbitration of any dispute relating to the CBA. Thus, the Union's injunction request turns on the traditional principles of equitable relief.

The Court need only briefly retread the well-worn trail of traditional equitable remedy analysis. Classically, the Court considers (1) the claim's likelihood of success on the merits; (2) the potential for irreparable injury; (3) a balance of the relevant equities; and (4) the public interest. Indep. Oil, 864 F.2d at 930 n.3. In the context of Boys Markets cases, arbitrability "replaces the fourth factor entirely, and tends to preempt the first." Id.

The Union's likelihood of success is a matter of contractual interpretation. The seemingly inconsistent durational language of Article 44 and the 2015 Agreement and Stipulation must be resolved by the arbitrator. The intent and conduct of the parties may also prove relevant to this inquiry. The Union's irreparable injury is clear: its members have been, and will continue to be, out of work. The balance of equities weighs in favor of the Union as well. The Union's efforts to arbitrate have gone unanswered by TTS. Finally, the public interest in this case points strongly in favor of the national policy favoring arbitration. See Boys Markets, 398 U.S. at 253.

### D. The Union's Motion for Preliminary Injunctive Relief

The Union has not provided the Court with a proposed injunctive order. See L. Civ. R. 65 ("Any motion for a temporary restraining order or preliminary injunction shall be accompanied by

7

**Civil No. 16-2635 (GAG)**

a proposed order."). Equitable relief is an extraordinary remedy. See generally Otis Elevator, 408 F.3d at 9-10. In this case, relief must be confined to the procedures bargained-for in the CBA.[3] Nevertheless, when a court determines a dispute between parties is covered by a binding arbitration agreement, the court should enforce the arbitration provisions of the agreement. Id. at 8 (citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 455 (1957)).

In light of these principles, the Court hereby **ORDERS**:

1. TTS and the Union shall engage in arbitration pursuant to the terms of the CBA.

2. Until further determination by the arbitrator, TTS and the Union shall abide by the terms of the CBA.

3. To the extent more specific injunctive relief is required, either party may submit a proposed order to the Court.

4. The Union shall provide a bond in accordance with Rule 65(c) of the Federal Rules of Civil Procedure.

### III. Conclusion

For the reasons stated above, Defendant's motion to dismiss at Docket No. 18 is **DENIED**. Plaintiff's motion for preliminary injunction at Docket No. 2 is **GRANTED**.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 1st day of November, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[3] The Court anticipates TTS will meaningfully engage in arbitration. As TTS explained, "[c]ontrary to the Union's representations to this Court, TTS is available to negotiate in good faith." (Docket No 22-2 at 3.)

8